UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYUNG SOOK JONES,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS DEJOY, POSTMASTER GENERAL UNITED STATES POSTAL SERVICE (PACIFIC AREA) AGENCY,<br><br>Defendant. | Case No. 21-cv-02849-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 41 |

Before the Court is Defendant's motion for summary judgment. Dkt. No. 41 ("Mot."). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons below, the Court **GRANTS** the motion.

**I.   BACKGROUND**

Plaintiff Kyung Sook Jones has been employed as a letter carrier with the United States Postal Service since December 1986. Dkt. No. 42-1 ("Jones Dep.") 16:8–12. Plaintiff is a member of the National Association of Letter Carriers, which has a collective bargaining agreement with the Postal Service. *Id.* 15:22–16:4; Dkt. No. 43 ("Lau Decl.") ¶ 3; Dkt. Nos. 43-1, Ex. A; 43-2, Ex. B. The agreement provides for a grievance-arbitration procedure to resolve employment disputes. Dkt. No. 43-2, Ex. B at 10–22.

Plaintiff had been on a limited duty job assignment since at least 2008 due to a workplace injury. *See* Dkt. No. 43-3, Ex. C at 5, 39. On August 16, 2019, management offered Plaintiff a new modified job assignment that required her to deliver mail, unlike her prior assignment. *Id.* at 5–6, 37, 51. On August 28, 2019, Plaintiff signed the modified job assignment under protest. Jones Dep. 39:22–40:5, Dkt. No. 43-3, Ex. C at 51–52.

On September 11, 2019, Plaintiff initiated a grievance through the union process regarding the modified assignment, alleging the Postal Service failed to provide duties consistent with her medical restrictions. Jones Dep. 42:15–43:4; Dkt. No. 43-3, Ex. C at 3–4. Plaintiff's union representative stated that Plaintiff had provided an "updated Duty Status Report that indicates she is unable to drive and that she is not to deliver mail, yet management continues to offer her mail to carry before sending her home early." Dkt. No. 43-3, Ex. C at 8. Postmaster Heather McTigue, on behalf of management, stated that the Postal Service had been instructed by the Department of Labor ("DOL") to maintain the modified job assignment, and that Plaintiff's restrictions did not prevent her from walking, driving, or carrying mail within a weight limit. *Id.* at 49–50. The grievance process ended at an impasse and did not proceed to arbitration. Dkt. 43-4, Ex. D at 2–6; Dkt. No. 43-5, Ex. E; Jones Dep. 59:17–20.

On October 4, 2019, Plaintiff initiated another grievance, similarly asserting that the Postal Service was sending her home early and assigning work inconsistent with her doctor's recommendations. Dkt. No. 43-6, Ex. F; Dkt. No. 43-7, Ex. G. McTigue stated that "Jones would go home early because she refused to deliver mail." Dkt. No. 43-8, Ex. H at 18. The grievance process ended at an impasse, Dkt. No. 43-7, Ex. G, and Plaintiff's union requested arbitration, Dkt. No. 43-8, Ex. H at 2. Plaintiff stated she is unsure if arbitration was completed. Jones Dep. 74:6–16.

Plaintiff's third grievance, initiated on December 6, 2019, ended in a partial resolution and partial impasse. *See* Dkt. Nos. 43-9, Ex. I; 43-10, Ex. J at 2. The parties agreed that Plaintiff's hours would be 5:30 a.m. to 9:30 a.m. for four hours of casing duty, and that Plaintiff would do a maximum of two additional hours of "undelivered bulk business mail" duty when that work was available. Dkt. No. 43-10, Ex. J at 2–3. The portion of the grievance that ended at an impasse did not proceed to arbitration. Dkt. No. 43-11, Ex. K.

Plaintiff was on holiday when the resolution was reached. *See* Dkt. No. 47 ("Opp.") ¶ 4. When she returned to work, "she was informed that her work start schedule had not changed nor had the work activities as was agreed in the resolved part of the grievance." *Id.* On January 8, 2020, Plaintiff initiated a fourth grievance alleging that the Postal Service was not abiding by the

2

1   resolution. Dkt. No. 43-12, Ex. L. On January 22, 2020, a formal meeting was held as part of the
2   grievance process. *Id.* at 2. McTigue stated that the modified job assignment could not be
3   changed through the grievance process and that the DOL had instructed Plaintiff to "abide by the
4   job offer as written." *Id.* at 5. McTigue added that Plaintiff was to start work at 7:30 a.m. casing,
5   then "go to the street to deliver mail" per the initial modified job assignment. *Id.* At the next step
6   of the process, the dispute resolution team remanded the grievance so the parties could review the
7   DOL decision cited by McTigue. Lau Decl. ¶ 4(k); Dkt. Nos. 43-13, Ex. M; 43-14, Ex. N.

8          On March 20, 2020, Plaintiff contacted the Postal Service Office of Equal Employment
9   Opportunity ("EEO"). Dkt. No. 16-2 ("Haley Decl.") ¶ 4. Plaintiff listed the incident date as
10  February 14, 2020, alleging McTigue had retaliated and discriminated against her by refusing to
11  comply with the grievance resolution, including by not allowing her to start at 5:30 a.m. instead of
12  7:30 a.m. *Id.*, Ex. A at 4–5, Ex. B at 9. On April 16, 2020, Plaintiff submitted a formal EEO
13  complaint. *Id.*, Ex. C at 11–13. Plaintiff alleged discrimination based on race and disability, and
14  retaliation for filing an EEO complaint in 2016. *Id.* at 12. The complaint lists the discriminatory
15  incidents as occurring on four dates in 2020: February 14, March 17 and 27, and April 1. *Id.*

16         The EEO issued a decision dismissing Plaintiff's complaint for failure to state a claim.
17  Haley Decl. ¶ 5; Dkt. No. 16-2, Ex. D at 16–18. The EEO reasoned that "[t]he proper forum for
18  [Plaintiff] to raise [her] dissatisfaction with the adherence to a grievance decision was within the
19  grievance procedure itself, not the EEO process." Dkt. No. 16-2, Ex. D at 17. It stated that "[t]he
20  Commission has held that Complainant's dispute in the EEO process with a grievance decision
21  constitutes an impermissible collateral attack on the administrative grievance forum, and fails to
22  state a claim." *Id.* The U.S. Equal Employment Opportunity Commission ("EEOC") affirmed the
23  decision and issued a right-to-sue letter on January 12, 2021. *See* Dkt. No. 1 ("Compl.") at 4–6.

24         Plaintiff filed this case on April 19, 2021. *See* Compl. Representing herself, Plaintiff
25  brings claims under Title VII for racial discrimination, disability discrimination, and unlawful
26  retaliation for filing an EEO complaint in 2016. *Id.* ¶¶ 5, 6. Plaintiff alleges she was forced to
27  perform duties beyond her physical restrictions, and that her supervisor threatened to terminate her
28  if she did not deliver letters. *Id.* ¶¶ 4, 6. She alleges "management did not follow a union

grievance decision" and "failed to provide [a] safe job offer to [a] limited duty worker." *Id.* ¶ 6. The complaint lists the dates of the discriminatory acts as February 14, 2020, and March 17, 2020. *Id.* ¶ 7. Plaintiff explained what occurred on these dates in her opposition to the motion for summary judgment. On February 14, management told Plaintiff she could start work at 5:30 a.m.—per the grievance resolution—but "she was still asked to deliver mail." *See* Opp. ¶ 5. On March 17, management threatened to fire Plaintiff if she did not deliver a parcel. *Id.* ¶ 6. Plaintiff states this threat of termination "motivated" her to file her EEO complaint on March 20, 2020. *Id.*

## II.   LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence

supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

## III.   DISCUSSION

Defendant argues that Plaintiff failed to timely exhaust her administrative remedies because she did not contact an EEO counselor within 45 days of the discriminatory event.[1] *See* Mot. at 14–15.[2] The Court agrees.

"[T]o bring a Title VII claim in district court, a plaintiff must first exhaust her administrative remedies." *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001) (citing 42 U.S.C. § 2000e-16(c)). Under Title VII, "a federal employee must notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct." *Id.* at 708 (citing 29 C.F.R. § 1614.105). This deadline functions as a "statute of limitations" that "is subject to waiver, estoppel, and equitable tolling." *Lyons v. England*, 307 F.3d 1092, 1105 n.5 (9th Cir. 2002)

---

[1] Defendant's initial motion to dismiss was based on exhaustion principles from the Civil Service Reform Act, 5 U.S.C. § 7121(d), which requires employees to choose between the grievance process or the statutory process. *See* Dkt. No. 16 at 14–15. As Defendant acknowledges, courts have found that Section 7121(d) does not apply to postal employees. *See Hickey v. Brennan*, 969 F.3d 1113, 1119 (10th Cir. 2020) (citing 29 C.F.R. § 1614.301(c)); *Burke v. U.S. Postal Serv.*, 888 F.2d 833, 834 (Fed. Cir. 1989).

[2] In addition to her opposition, Dkt. No. 47, Plaintiff filed a "reply to Defendant's Response," Dkt. No. 50, which is not allowed under the local rules without Court approval. *See* Civil L.R. 7-3(d). Given Plaintiff's status as a pro se litigant, the Court has considered her additional arguments.

1  (quoting *Zipes v. Trans World Airlines*, *Inc.*, 455 U.S. 385, 393 (1982)).  A plaintiff who fails to

2  contact an EEO counselor in time is precluded from pursuing her claim in federal court.  *Boyd v.*

3  *U.S. Postal Serv.*, 752 F.2d 410, 414–15 (9th Cir. 1985).

4      "The time period for filing a complaint of discrimination begins to run when the facts that

5  would support a charge of discrimination would have been apparent to a similarly situated person

6  with a reasonably prudent regard for his rights."  *Id.* at 414; *see also Mulligan v. Lipnic*, 734 F.

7  App'x 397, 399 (9th Cir. 2018) (plaintiff "was required to bring her claims within 45 days of the

8  alleged adverse employment action").[3]  "Discriminatory or retaliatory acts under Title VII are

9  'discrete acts' that start a new clock for filing administrative charges alleging that act, and are not

10  actionable unless they occur within the statutory period."  *Anderson v. City & Cnty. of San*

11  *Francisco*, 169 F. Supp. 3d 995, 1012 (N.D. Cal. 2016) (quoting *Nat'l R.R. Passenger Corp. v.*

12  *Morgan*, 536 U.S. 101, 113–114 (2002)).  Discrete acts that are time barred are not actionable,

13  even if related to acts alleged in timely filed charges.  *Cherosky v. Henderson*, 330 F.3d 1243,

14  1246 (9th Cir. 2003) (quoting *Morgan*, 536 U.S. at 119).  For example, an employer's rejection of

15  a proposed accommodation does not create a "continuing violation": "[a]lthough the *effect* of the

16  employer's rejection continues to be felt by the employee for as long as he remains employed, that

17  continued effect is similar to the continued effect of being denied a promotion or denied a transfer

18  . . . [which are] examples of a discrete act."  *Id.* at 1248 (quoting *Elmenayer v. ABF Freight Sys.,*

19  *Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003).

20      On its face, Plaintiff's complaint alleges two discrete discriminatory or retaliatory acts: (1)

21  being "still asked to deliver mail" on February 14, 2020, and (2) being threatened with termination

22  if she did not deliver mail on March 17, 2020.[4]  *See* Compl. at 2; Opp. ¶¶ 5, 6.  Based on

23  undisputed facts, however, Plaintiff's claim accrued much earlier than these incidents, neither of

---

[3] *Mulligan* and the other unpublished Ninth Circuit decisions cited in this order are not precedent, but may be considered for their persuasive value.  *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

[4] Plaintiff states in her opposition that the complaint also covers March 27, 2020, and April 1, 2020.  But Plaintiff did not allege these dates in her complaint.  *See* Compl.  Further, Plaintiff provides no explanation or evidence as to what occurred on these dates beyond stating they are "related" to the earlier incidents.  *See* Opp. ¶ 6.  The Court finds that Plaintiff has failed to raise a triable issue of fact as to these additional dates, despite ample opportunity to do so.

1   which started a new 45-day clock.

2         The crux of Plaintiff's case is that in retaliation for her filing of an EEO complaint in May
3   2016, the Postal Service imposed job duties that are beyond Plaintiff's physical restrictions. *See*
4   Compl. ¶¶ 4, 6; Dkt. No. 14 at 3–4 (Plaintiff's case management statement describing the primary
5   issue as "USPS has continued to treat a modified job offer as final").  Thus, the clock began to run
6   as early as August 2019, when Plaintiff signed under protest the modified job assignment that
7   required her to perform these duties. *See* Jones Dep. 39:22–40:5; Dkt. No. 43-3, Ex. C at 51–52.
8   Plaintiff's subsequent grievances and this case all stem from that modified job assignment, but she
9   did not contact an EEO counselor until March 20, 2020, well beyond the 45-day limit. *See* Dkt.
10  Nos. 43-7, Ex. G at 2 (grievance EKA-CC35-19); 43-10, Ex. J at 2–3 (grievance EKA-159-19);
11  43-13, Ex. M at 3 (grievance EKA-05-2020); 16-2, Ex. B at 7–9 (EEO Inquiry Report).

12        To the extent Plaintiff asserts that the Postal Service's refusal to adhere to the grievance
13  resolution constitutes a discrete discriminatory act, the latest her claim possibly accrued was
14  January 8, 2020—the day she initiated a grievance *based on the Postal Service's failure to abide*
15  *by the resolution*. *See* Dkt. No. 43-14, Ex. N at 4; Opp. at (II)(A) (stating Plaintiff's EEO
16  complaint "does stem from management not complying" with the grievance resolution).  At that
17  point, "the facts that would support" Plaintiff's charges were clearly "apparent." *See Boyd*, 752
18  F.2d at 414.  This was still more than 45 days before Plaintiff contacted the EEO counselor.  And
19  by her own admission, Plaintiff knew that Defendant would not comply with the resolution even
20  before then.  *See* Opp. ¶ 4 (noting Plaintiff was "on holiday" when the resolution was reached and
21  that when she returned, "she was informed that her work start schedule had not changed nor had
22  the work activities as was agreed in the resolved part of the grievance").

23        Plaintiff calls the incidents in February and March 2020 an "escalation" in management's
24  response, *see* Opp. at II(B), but these incidents do not constitute "discrete acts" that would "start a
25  new clock," *see Leliand v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1092 (N.D. Cal.
26  2008).  At most, they represent Defendant's ongoing enforcement of the modified job assignment
27  signed in August 2019.  First, during the February 2020 incident, Plaintiff was "still asked to
28  deliver mail."  *See* Opp. ¶ 4.  Plaintiff admits—and her several grievances demonstrate—that she

7

was required to deliver mail well before this date. *See, e.g.*, Jones Dep. 39:22–40:5; Dkt. No. 43-3, Ex. C at 51–52. Ongoing implementation of the modified job assignment cannot constitute a "continuing violation" under this Circuit's case law, and being "still asked" to deliver mail did not start a new clock. *See Moss v. England*, 143 F. App'x 739, 740 (9th Cir. 2005) (45-day clock started when employer imposed restrictions on employee, not when a supervisor later said the restrictions "would never be lifted"). Second, the March 2020 threat of termination is not actionable under Title VII. By her own description, "[b]eing told she would be fired if she didn't deliver mail . . . motivated [] Plaintiff to initiate an [EEO] complaint[.]" Opp. ¶ 6. But "a mere threat of termination does not constitute an adverse employment action" under Title VII. *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1093 (S.D. Cal. 2020) (quoting *Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th Cir. 2009)). The case law requires a material change in "the compensation, terms conditions, or privileges of . . . employment." *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). No such change occurred here: Plaintiff provides no evidence she was terminated, and again, her own grievances show management required her to deliver mail well before this date.

Further, based on the undisputed record, the Court finds that tolling is not warranted. Having filed several EEO complaints (and a prior case in this Court with similar allegations, *Jones v. Brennan*, No. 18-cv-7569-HSG, 2021 WL 1923268 (N.D. Cal. May 13, 2021)), Plaintiff is familiar with the statutory process. *See* Jones Dep. 12:4–9. Plaintiff does not allege she was affirmatively misled by a Postal Service official. *See Boyd*, 752 F.2d at 414. Neither Plaintiff's initiation of the grievance process nor her communication with the DOL tolls the time limit. *See Huynh v. U.S. Postal Serv.*, No. 11-CV-03195 NC, 2013 WL 2048681, at *5 (N.D. Cal. May 14, 2013) ("[U]tilizing the union grievance process is not the same thing as contacting an EEO counselor . . . . Nor does it toll the statute of limitations.") (citing *Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO, Loc. 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 240 (1976)).

In sum, because Plaintiff was (1) fully aware of the alleged discriminatory acts relating to the modified job offer and refusal to adhere to the grievance resolution more than 45 days before she contacted an EEO counselor, and (2) her additional alleged incidents do not constitute

"discrete acts" that would start a new clock, her claims fail.  Plaintiff did not timely exhaust her administrative remedies before filing this case, as the law clearly requires.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's motion for summary judgment.  The Clerk is directed to enter judgment in favor of Defendant and to close the case.

**IT IS SO ORDERED.**

Dated:   11/15/2022

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge